# Di Orio, Appellant, *v.* Philadelphia Rapid Transit Company.

*Negligence—Street railways—Motorcycle—Right-angle collision —Speed—Contributory negligence—Nonsuit.*

In an action against a street railway company to recover for personal injuries sustained by the driver of a motorcycle in a right-angle collision with a street car at a street intersection, a compulsory nonsuit was properly entered, where it appeared that when plaintiff arrived at the house line, which was thirty feet from the tracks, the motorcycle was going three or four miles per hour and the car was being operated eight or nine miles per hour, that plaintiff looked just before crossing the track, saw the car in motion twenty to thirty feet away, but proceeded to cross, and was struck when his front wheels were practically over the track.

Argued Jan. 21, 1918. Appeal, No. 271, Jan. T., 1917, by plaintiff, from judgment of C. P. No. 3, Philadelphia Co., June T., 1915, No. 4062, refusing to take off compulsory nonsuit in the case of Charles Di Orio v. Philadelphia Rapid Transit Company. Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Trespass for personal injuries. Before FERGUSON, J.

From the record it appeared that plaintiff sustained injuries in a right-angle collision between a motorcycle which he was driving and a street car, at a street intersection.

The facts further appear from the following excerpt from the opinion of FERGUSON, J., in entering the nonsuit:

For the purposes of this motion we have to take the plaintiff's evidence as if it was true. He says that when he arrived at the house line the car was 80 to 100 feet away, and that the house line was thirty feet away from the track on Seventeenth street, so that the car from the point of collision was about three times the distance that the motorcycle was from the point of collision. The plaintiff said the car was going eight or nine miles an hour, and we have to accept his estimate on that speed; he said that he was going three or four miles an hour and we must accept that estimate of speed. Assuming those estimates to be correct, the car was going three times as fast as the motorcycle approximately. Therefore, the car was approaching a point at a distance three times as great as the plaintiff was from that point and the car was going at three times the speed the plaintiff was going. If a man is operating a motorcycle in the City of Philadelphia at night, he ought to have experience enough to know something about the conditions upon the street. He knows or ought to know that the trolley cars have the paramount right to the tracks, and that while other vehicles have a right to travel on the tracks or to cross the tracks, yet there is a paramount right in the

trolley cars to use the tracks; in fact the trolley cars cannot go any place else than on the tracks, whereas motorcycles and automobiles can be driven any place the driver wants to send them. The plaintiff knew or ought to have known that sometimes trolley cars do not stop at streets. They might not stop because there are no passengers to get on or because it is an unfrequented neighborhood or because it is a late hour at night and there is no necessity for stopping, and the motorman might go by a corner without stopping at that corner even though the councils might have expressed as their opinion that for the safety of the public he ought to stop. Knowing that possibility, the plaintiff drove his motorcycle at the moderate speed which he said he drove it, right on to the point where the collision took place, and he traveled thirty feet, with his eye on the car, presumably, and when he arrived at the track he saw that the car was twenty or thirty feet away. The plaintiff was negligent. He was careless of the safety of himself and the young lady who accompanied him, because he had no right to go up to the track. If his vehicle was one which did not enable him to stop instantly, he had no right to go up to the track in a vehicle which he says could not stop in less than eight or ten feet without knowing exactly what the trolley car was going to do. It was his duty to have stopped his vehicle before he got to the track and found out what the car was going to do. When the nose of his vehicle arrived at the track, if it was true he could not stop within eight or ten feet, then he was committed to a crossing and he could not stop on the track. He traveled up to the track, looking at the car all the time, and when he got to the track, without increasing his speed or without retarding it, apparently, he went slowly across the track at three or four miles an hour, as he said, and in the meantime the trolley car did not stop. Why it did not stop we do not need to concern ourselves. It may be that the motorman thought the plaintiff was going to get over in safety; it may be that the motorman

was careless. That would be a matter that you would have to settle after you heard the evidence of the defendant, but taking the plaintiff's story and assuming that all he said was true and assuming that the motorman was negligent and failed to exercise the care which he ought to have exercised, the plaintiff took the chance of getting over in front of the trolley car, or he went over in front of the trolley car without looking at the car. In either event he cannot ask the transit company to pay the damages. That is the reason I enter a nonsuit.

The lower court entered a compulsory nonsuit, which it subsequently refused to take off. Plaintiff appealed.

*Error assigned,* among others, was in refusing to take off the nonsuit.

*Arthur S. Minster,* of *Simpson, Brown & Williams,* for appellant.

*William M. Stewart, Jr.,* for appellee.

PER CURIAM, February 25, 1918:

The evidence in this case shows that the court below was fully justified in refusing to take off the judgment of compulsory nonsuit. The plaintiff drove his motorcycle directly in front of an approaching street car. The judgment is affirmed.